**SO ORDERED.**

**SIGNED this 7th day of March, 2019.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>JERRY CLAUDE SCHEPMANN,<br><br>Debtor. | Case No. 18-11877<br>Chapter 7 |

### ORDER (1) DENYING MOTION TO EXTEND DEADLINE FOR FILING DISCHARGEABILITY COMPLAINT OR OBJECTION TO DISCHARGE; and (2) QUASHING "SUBPOENA DUCES TECUM"

Deadlines in the bankruptcy rules mean what they say.[1] The deadline to file complaints to except debts from discharge or to object to a debtor's discharge (generally, "discharge objections") is 60 days after the first scheduled § 341 meeting

---

[1] *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992) ("Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality.").

1

of creditors.[2] That deadline may only be extended for cause and the party seeking the extension has the burden to show it. Courts consider whether the debtor has failed to cooperate and whether the creditor has been duly diligent, among other factors.

The last day to file discharge objections in this case was December 31, 2018. Creditor's counsel attended the debtor's October 30 § 341 meeting and the November 28 trustee's Rule 2004 examination of the debtor but did not participate. On November 29, the creditor scheduled a Rule 2004 examination of the debtor's mother. It didn't file this motion to extend the discharge objections deadline until December 19 and it set the motion for hearing on February 14, 2019. It appears that the debtor has been cooperative and that the creditor didn't pursue two opportunities to examine the debtor. No cause being shown, the debtor's objection to the creditor's extension motion should be sustained and the motion is denied.[3]

The Court also reviews the document subpoena the creditor attached to its Rule 2004 examination order directing the debtor to appear and produce documents and quashes it for failure to comply with Rule 45's and D. Kan. LBR 2004.1's requirements.

---

[2] *See* Fed. R. Bankr. P. 4004(a) (objecting to discharge); Fed. R. Bankr. P. 4007(c) (determining the dischargeability of a debt).
[3] A hearing was held on this matter on February 14, 2019 at a regularly scheduled motion docket. W. Thomas Gilman appeared on behalf of the debtor. Eric D. Bruce appeared on behalf of creditor Bank of Holyrood. J. Michael Morris, the Chapter 7 trustee also appeared.

2

Facts

Jerry Schepmann filed his Chapter 7 case on September 25, 2018. In the Court's notice of Schepmann's bankruptcy filing, the meeting of creditors was scheduled for October 30, 2018, and the deadline for filing a general objection to the debtor's discharge or a proceeding to except a particular debt from it was set as December 31, 2018.[4] Schepmann is a farmer who lives and farms on his mother's land. He runs her farming operation. Schepmann's long time lender, the Bank of Holyrood (Bank), believes Schepmann cannot account for some of its collateral. Schepmann and related entities owe the Bank more than $600,000.[5]

Bank counsel appeared in this case on October 3.[6] On October 12, he filed a proof of claim on the Bank's behalf and a motion for relief from stay.[7] Counsel attended the debtor's § 341 meeting of creditors on October 30 but did not question the debtor. The chapter 7 trustee conducted a Rule 2004 examination of the debtor on November 28, noticing it as D. Kan. LBR 2004.1 requires.[8] Again, Bank counsel appeared but did not examine the debtor because the trustee did not arrange for a transcript of the examination.[9] On November 29, the Bank noticed a Rule 2004 examination of the debtor's mother, setting it for January 7, after the discharge

---

[4] Doc. 6.
[5] See Claim No. 1-1. The Bank represents that its claim is fully secured by a vehicle, tractors, equipment, crops, livestock, and inventory.
[6] Doc. 9.
[7] Doc. 10.
[8] Doc. 21. See Fed. R. Bankr. P. 2004.
[9] This is a customary practice in this Division, likely done to minimize administrative expense. I note that the Trustee's notice stated that the examination would be "recorded." Doc. 21.

3

objection deadline.[10] At the hearing on the extension motion, Bank counsel said he needed to examine the mother before examining Schepmann. The Bank wanted information about mother's and son's farm business relationship.

During the 60-day period, the Bank was active in other facets of this case. When, on December 5, the trustee moved to sell some of the debtor's unencumbered non-exempt farm equipment to the debtor for cash,[11] the Bank objected to the sale and overbid the debtor, ultimately purchasing the equipment for itself.[12] It also pursued its stay relief motion, achieving a partial resolution.[13]

The Bank did not get around to filing the extension motion until December 19, 12 days before the deadline, setting it for hearing on February 14, 44 days after the deadline.[14] It sought a 60-day extension or until March 1, 2019 "to assist in the preparation of his objection to discharge . . . and to file a complaint to determine the dischargeability of its debt"[15] The motion further states that the "bank has information that there may be specific facts supporting a dischargeability and/or discharge complaint."[16] It does not identify a reason why the Bank could not file a

---

[10] Doc. 28. This notice references an "attached list" of documents for the witness to bring to the examination, but no list is attached. The list of documents is attached to the Order for Rule 2004 examination as a "subpoena duces tecum." Doc. 30.
[11] Doc. 32.
[12] Doc. 41.
[13] Doc. 20.
[14] Doc. 44, 45.
[15] Doc. 44 at ¶ 2.
[16] *Id.* at ¶ 3.

4

complaint by the December 31 deadline. Schepmann objected to the extension motion on January 2, 2019 and the Bank filed a reply on January 7.[17]

Not until January 22, 2019 did the Bank move for its own Rule 2004 examination of the debtor.[18] The Bank submitted an order directing the debtor to appear on January 25, an agreed-to date.[19] Attached to the order, *but not to the application*, was a one page "subpoena duces tecum." The subpoena directed the debtor to produce twelve categories of documents at the examination, including documents already produced to the Trustee in November.[20] The Court entered that order on January 23, two days before the scheduled examination. The subpoena was not presented on, nor does it substantially include the elements of a typical subpoena form.[21] The debtor objected to the subpoena based on the very short notice he received to comply with the document requests, the burdensome scope of the document requests, and the Bank's failure to comply with Fed. R. Civ. P. 45.[22]

The Court heard argument on the debtor's objections to the extension motion and the subpoena on February 14, 2019.

Conclusions of Law

A. The Extension Motion

---

[17] Doc. 48, 50.
[18] Doc. 56.
[19] Doc. 58.
[20] Doc. 58, p. 3.
[21] Fed. R. Bankr. P. 9016 makes Fed. R. Civ. P. 45 applicable in bankruptcy cases. *See* Director's Bankruptcy Forms 2540, 2550, 2560, and 2570.
[22] Doc. 59.

5

Fed. R. Bankr. P. 4004(a) and 4007(c) establish the deadlines for filing adversary proceedings to object to a debtor's discharge under 11 U.S.C. § 727(a) and to except a particular debt from that discharge under 11 U.S.C. § 523(a)(2), (4), or (6). The deadline is 60 days after the first date set for the § 341 creditors' meeting. The rules provide a means of seeking an extension.[23] The 60-day deadline is not "jurisdictional" and can be waived.[24] A creditor seeking an extension must file a motion within the initial 60-day period,[25] as the Bank did here. There is no requirement that the extension be granted within the 60 days, though setting the hearing after the initial deadline exposes the movant to the risk that the extension might be denied. Both Rules permit the Court to extend the deadline "for cause."[26]

Determining what is sufficient cause to extend the deadline is a factually driven analysis, but bankruptcy courts have developed a set of factors to consider.[27] These include—

> (1) whether the Debtor refused in bad faith to cooperate with the creditor (citation omitted); (2) whether the creditor had sufficient notice of the deadline and the information to file an objection (citation omitted); (3) the possibility that the proceedings pending in another forum will result in collateral estoppel on the relevant issues (citation omitted); (4)

---

[23] Rule 4004(b) and Rule 4007(c).
[24] *Kontrick v. Ryan,* 540 U.S. 443, 447 (2004) (holding that Rule 4004, a claim-processing rule, is not jurisdictional, but a debtor forfeits the right to object to timeliness if not raised prior to the bankruptcy court reaching the merits of the discharge objection).
[25] Rule 4004(b)(1) (noting a limited exception in (b)(2) for filing an extension motion after the objection deadline has expired due to discovery of facts after the deadline); Rule 4007(c).
[26] Rule 4004(b)(1) and Rule 4007(c).
[27] *In re Stonham,* 317 B.R. 544, 547-48 (Bankr. D. Colo. 2004) (addressing cause for extension of Rule 4007 deadline).

6

whether the creditor exercised diligence (citation omitted); and (5) the complexity of the case (citation omitted).[28]

Collier's treatise suggests that the need to extend must be "compelling."[29] Courts in the Tenth Circuit must strictly enforce the discharge objections deadline.[30] Courts have denied extensions for lack of diligence when the creditor waited until 10 days before the deadline to conduct a Rule 2004 examination,[31] or when a creditor failed to seek an examination within the period and moved for an extension on the final day of it.[32] The burden to show cause is on the movant and requires a showing that the movant has engaged in a "reasonable degree of due diligence" before resorting to an extension request.[33]

---

[28] *Id.* at 547 n. 1.

[29] 9 COLLIER ON BANKRUPTCY ¶ 4007.04[3][b] (Richard Levin & Henry J. Sommer eds.-in-chief, 16th ed. 2018) (discussing grounds for extension of Rule 4007 deadline). *See also In re Garner,* 339 B.R. 610, 611 (Bankr. W.D. Tex. 2006); *In re Grillo,* 212 B.R. 744, 746 (Bankr. E.D. N.Y. 1997) (explaining "strict interpretation" of cause requirement for extending Rule 4004 deadline); *Kansas Dept. of Labor v. Hunter (In re Hunter),* 552 B.R. 864, 869, 870 (Bankr. D. Kan. 2016) (stating Rule 4007(c) deadline is "strictly enforced" and § 105(a) equitable powers cannot be used to extend the deadline).

[30] *Themy v. Yu (In re Themy),* 6 F.3d 688, 689 (10th Cir. 1993); *In re Dickinson,* 242 F.3d 388 (Table), 2000 WL 1761065 at *2 (10th Cir. 2000). *See also H.T. Paul Co. v. Atteberry (In re Atteberry),* 194 B.R. 521, 523 (D. Kan. 1996) (time limits of Rules 4004 and 4007 must be strictly enforced, citing *Themy*).

[31] *See e.g. In re Leary,* 185 B.R. 405, 406 (Bankr. D. Mass. 1995); *In re Dekelata,* 149 B.R. 115, 117 (Bankr. E.D. Mich. 1993) (lacking cause where Rule 2004 exam sought 11 days prior to deadline expiring).

[32] *See e.g. In re Mendelsohn,* 202 B.R. 831, 832 (Bankr. S.D.N.Y. 1996); *In re Woods,* 260 B.R. 41,45 (Bankr. N.D. Fla. 2001) (cause for extension lacking where creditor didn't attend § 341 meeting or seek discovery).

[33] *In re Stonham,* 317 B.R. at 547 ("excusable neglect" standard improper for enlargement of deadline). *See also In re Hunter,* 552 B.R. at 869 (Rule 9006(b)(1)'s excusable neglect standard is inapplicable to deadline for filing nondischargeability complaints); *In re Nowinski,* 291 B.R. 302, 306 (Bankr. S.D.N.Y. 2003); *In re Desiderio,* 209 B.R. 342, 346 (Bankr. E.D. Pa. 1997).

7

Traditionally in this division, debtors' and creditors' counsel agree to one or a series of extensions of the Rules 4004 and 4007 deadlines when they can. Such agreements arise out of a shared understanding that the creditor needs more information to decide whether to mount a discharge objection while the debtor seeks to persuade the creditor that such a challenge would be groundless or unprofitable (or both). But when a debtor objects to an extension request, I must follow the rules as written and interpreted by developed case law.

The Bank's motion represents that it has "information that there may be specific facts supporting a dischargeability and/or discharge complaint."[34] It knew if it could file a complaint the day it filed the motion, December 19. The motion doesn't say why the Bank couldn't have filed the complaint in time. The debtor complied with the Trustee's document and examination requests. There have been informal discovery problems between the Bank and the debtor, but none were brought before the Court until the hearing on the extension motion.[35] The Bank didn't formally pursue any discovery from the debtor prior to filing its motion.[36] When Schepmann was examined by the Chapter 7 trustee one month before the Rule 4004 and 4007 deadline expired, the Bank's counsel attended, but didn't participate. He "watched" (his words) because no court reporter was present.

---

[34] Doc. 44, ¶ 3.

[35] In the Bank's response to debtor's objection, it contends that debtor has refused to provide copies of his 2017 tax returns. *See* Doc. 50.

[36] The Court's review of the docket report doesn't show that the Bank has served any formal discovery requests on the debtor. *See* D. Kan. LBR 7026.1(j)(2) (requiring the party serving discovery requests to file a certificate of service identifying the party served, the type of discovery served, and the date and manner of service).

Schepmann provided documents in response to the trustee's letter request, including his 2017 tax returns.

The Bank has been active in other aspects of this case—seeking stay relief, opposing the debtor's lien avoidance motion, and outbidding the debtor at a trustee's sale of his unencumbered, non-exempt farm equipment, an act that seems more motivated by spite than sense. Did the Bank consider bringing a court reporter to the trustee's examination? Even though there was no reporter, why didn't the Bank take that opportunity to question the debtor under oath? Why did the Bank notice the mother's examination after the deadline? Why did it wait until after the deadline to notice a second Rule 2004 examination of the debtor? And if the Bank had "specific facts supporting … a complaint" on December 19, why didn't it file one? These questions weren't answered. The Bank failed to show a "compelling" need for an extension of the deadlines under Rules 4004(b) and 4007(c).

B. <u>The 2004 Examination Order and Subpoena Duces Tecum</u>

As for the debtor's objection to the document subpoena attached to the January 23, 2019 order for examination,[37] note that the judges of this District have attempted to streamline the Rule 2004 examination process by adopting D. Kan. LBR 2004.1. That rule provides a "one-step" noticing solution for Rule 2004 examinations that dispenses with a separate order for an examination or document

---

[37] Docs. 58, 59.

9

production from the *debtor*.[38] If the party seeking the examination requests that the debtor produce documents at the examination, the *notice* must contain a description of the documents requested.[39] It should also indicate whether the examination will be videotaped and recorded stenographically.[40] Any party may schedule a Rule 2004 examination of a debtor by notice alone but must give the other side 14 days' notice and certify that requesting counsel has attempted to coordinate scheduling with the other side.[41] Attendance at the examination and production of any requested documents "may not be required less than 14 days after the actual delivery of the notice."[42] The 14 days' notice can only be shortened by agreement or a court order.

The Bank didn't follow this simple procedure. Instead, the Bank filed an "application" on January 22 for a Rule 2004 examination of debtor on January 25—apparently an agreed-to date—and submitted a proposed order to the Court,

---

[38] D. Kan. LBR 2004.1(a).  A "sample notice" follows the text of the local rule.
[39] *See* sample notice following Local Rule 2004.1 If the 2004 examination is of a witness that is <u>not</u> the debtor, a subpoena is required to compel the attendance and production of documents at the examination. D. Kan. LBR 2004.1(d). The form of a subpoena for a Rule 2004 examination with production of documents is provided by Director's Bankruptcy Form 2540 and can be found at https://www.uscourts.gov/forms/bankruptcy-forms. That subpoena form *includes* required language by attachment of specified provisions of Fed. R. Civ. P. 45 – the subpoena rule. Director's Bankruptcy Forms are issued under the authority of Fed. R. Bankr. P. 9009(b). Their use is not required, unless a local rule requires their use, but such forms generally meet the requirements of the Bankruptcy Code and Rules.
[40] D. Kan. LBR 2004.1(e).
[41] D. Kan. LBR 2004.1(b).
[42] *Id.*

10

something that is unnecessary under the local rule.[43] The Bank's application did not seek any documents, but the January 23 order did. The Bank attached another page to the order titled "subpoena duces tecum" that doesn't resemble a form subpoena nor comply with Rule 45.[44] For that reason alone, the subpoena should be quashed. In addition, the order didn't allow 14 days to respond to the document request nor a minimum of 14 days from actual delivery of the "application" (*i.e.* notice) to produce the documents. Debtor's counsel had no advance notice of the document request. Nor had Debtor's counsel agreed in advance to produce documents at the 2004 examination. Allowing less than 48 hours for the debtor to gather, organize, and produce 12 separate categories of business documents at his scheduled examination is unreasonable. I should not have entered the order as presented, but since the Bank examined the debtor on January 25 without the documents, only the "subpoena duces tecum" attached to it should be quashed as violating not only Rule 45, but also Local Rule 2004.1(a) and (b). Future document requests should comply with the appropriate rules.

All counsel appearing in the Bankruptcy Court should review and use the LBR 2004.1 process for scheduling Rule 2004 examinations and requesting documents to be produced at them. After all, review of D. Kan. LBR 2004.1 and use

---

[43] Doc. 56, 58.
[44] Doc. 58, p. 3. The "subpoena" omitted the content required by Fed. R. Civ. P. 45(a)(1)(A)(iii) (time and place) and (iv) (set out text of Rule 45(d) and (e)). It also failed to comply with Rule 45(d)(2)(B) (14-day response period) and (d)(3)(i) (reasonable time to comply) and (iv) (undue burden). *See also* Director's Bankruptcy Form 2540—Subpoena for Rule 2004 Examination.

11

of the suggested sample form "Notice of Rule 2004 Examination" or a Director's Form 2540 "Subpoena for Rule 2004 Examination" might have averted some of the procedural problems. As always, parties having a dispute about either scheduling or document production are required to meaningfully meet and confer and, if they are unable to resolve their differences, bring those issues to the Court's attention for a prompt resolution.

Orders

The Bank's motion for an extension [Doc. 44] of the 60-day deadline for objecting to discharge or filing a complaint to except a debt from discharge is DENIED for lack of cause.

The debtor's objection [Doc. 59] to the Rule 2004 examination order is SUSTAINED. The "subpoena duces tecum" [Doc. 58, p. 3] attached to the Court's order directing the January 25, 2019 examination of the debtor is QUASHED for noncompliance with D. Kan. LBR 2004.1 and Fed. R. Civ. P. 45(a)(1), (d)(2)(B), and (d)(3)(i) and (iv).

# # #

12