**SO ORDERED.**

**SIGNED this 29th day of January, 2020.**



_____
Robert E. Nugent
United States Bankruptcy Judge
_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>**JERRY CLAUDE SCHEPMANN**<br><br>Debtor. | Case No. 18-11877<br>Chapter 7 |

### ORDER OVERRULING OBJECTIONS TO HOMESTEAD EXEMPTION

Kansans can exempt their ownership interest in their homestead if they, or their families, or both occupy it as a residence.[1] If the homestead is outside an incorporated city, it can extend to 160 acres and includes "improvements." The Bankruptcy Code recognizes that exemption.[2] Kansas state courts consistently hold

---

[1] KAN. STAT. ANN. § 60-2301 (2018 Supp.).
[2] 11 U.S.C. § 522(b) (allowing states to prohibit their citizens from choosing the federal exemptions set forth in § 522(d) and requiring the use of state exemptions).

1

that, for homestead purposes, "ownership" is not limited to fee title, but may also embrace leasehold interests.

Jerry Schepmann lives in a home he built on rural land that he rents from his mother on an oral crop-share lease. He also built barns, a well shed, and other improvements, all of which he uses in his farming operations. Because his leasehold interest is sufficient to support a homestead exemption under Kansas law, both the Bank of Holyrood's ("Bank") and the bankruptcy trustee's ("Trustee") objections are overruled.[3]

Facts

Jerry Schepmann grew up farming his parents', Claude and Marie Schepmann's family land near Bushton in Ellsworth County. In 2004, as part of their estate planning, Jerry's mother and father deeded the tract he claims exempt to him on a transfer-on-death (TOD) deed. They made similar deeds of other property to his siblings. The elder Schepmanns lived in Claflin, Kansas. Claude managed the operation using the farmstead and improvements while Marie served as Claflin's postmaster. She has since retired.

Members of the Schepmann family have farmed this and other land for over 100 years, some of it having been acquired by land patent. The land Jerry claims as exempt is a small tract, much less than 160 acres, situated on the following real estate:

---

[3] The debtor appeared by his attorney W. Thomas Gilman. The Bank of Holyrood appeared by its attorney Eric Bruce. The Chapter 7 Trustee did not actively participate in the trial of this matter.

> Southwest Quarter (SW/4) of Section 27, Township 17 South, Range 10 West of the 6th Principal Meridian (SW/4 27-17-10), Ellsworth County, Kansas ("the Land").

This Land is outside of any incorporated city, but is near the town of Bushton, Kansas.

The original farmhouse and other buildings were destroyed by a tornado in 1990. Before Jerry's father died, he rebuilt and maintained the "red barn," a corral, and some overhead bins. After Jerry's father died in 2005, Jerry erected another large barn (the "big barn"), a pole barn, a well shed, and his residence on the land. He continued to manage his farming and ranching operation from the property, living in the home and using one room as an office. He rents this and other land from Marie on shares. Their lease agreement is oral. Marie receives as rent one-third of the crops and pays for one-third of the fertilizer inputs. Jerry pays the farmstead's share of the ad valorem tax.[4] Marie pays the tax on other land he leases. Their oral arrangement has apparently been in force since Claude's death.

Jerry built the big barn in 2009, the well shed in 2010, the house (which contains his office) in 2012, and the pole barn in 2015. He financed the construction of the house/office with proceeds from the sale of his former residence in Hoisington and borrowing from the Bank. The Bank's president testified that the Bank did not take a security interest or mortgage in the house or the land, nor was there a construction loan agreement. Each structure is attached to the real estate in some way. According to Scott Christian, who built the structures, the big barn's anchors

---

[4] Ex. K, pp 34-35.

are set in concrete five feet deep with encased rebar to which the uprights for the barn are welded. The well shed is frame-built on a slab. The house is also frame-built, is finished inside, and is attached to a slab. The pole barn's poles are set in concrete. None of these structures could be removed without being destroyed and reduced to scrap. Jerry's testimony that he intended that these structures be attached to the land is consistent with his expectation that, upon his mother's passing, he will succeed to the land itself. Marie, the landowner, is in accord and testified that she owns the buildings. Even so, Jerry carries them on the depreciation schedules of his income tax returns.[5]

The Bank introduced other, less relevant information concerning Jerry's inability to account for certain collateral—none of which is implicated in this dispute—and emphasized that he failed to claim the leasehold as his exempt homestead until six months after the petition date. When Jerry filed this case on September 25, 2018, he scheduled a lease from Marie on Schedule G that he sparsely described as "Landlord-No Contract." On Schedule B, he reported "fixtures on farm ground" as personal property. In December of 2018, he amended his schedules to add two creditors.[6] On March 19, 2019, after discharge, he amended Schedule C to claim as his homestead—

> The debtor's possessory and leasehold interest in the residence and all out buildings (barns and sheds) situated on the Southwest Quarter of 27-17S-10W, not exceeding 160 acres in Ellsworth Co., KS, which property the debtor leases from Marie Schepmann.[7]

---

[5] Ex. 7.
[6] Doc. 42.
[7] Doc. 77

4

The Bank objected that the exemption was disclosed late, that Jerry could not exempt land he did not own, that the farmstead was "not leased in any traditional sense," not meaningfully disclosed until January of 2019 during Jerry's Rule 2004 examination, and that Jerry was proceeding in bad faith.[8] The Trustee responded to this objection, arguing that if the debtor was claiming any of the buildings as personal property, he could not exempt them as tools of the trade.[9]

Analysis

As the objector, the Bank bore the burden of proving that the debtor could not exempt the farmstead as his homestead.[10] Kansas has opted out of the federal exemption scheme in § 522(d), making the Kansas scheme of exemptions applicable in bankruptcy to Kansas debtors.[11] The debtor's exemption rights are determined as of the date of the filing of the bankruptcy petition.[12]

*Leaseholds may be homesteads.*

The Bank's objection relies in large part on Jerry's lack of fee title ownership, asserting that a debtor must be an "owner" of property to claim it exempt. The text of KAN. STAT. ANN. § 60-2301 provides—

---

[8] Doc. 83.
[9] Doc. 86.
[10] Fed. R. Bankr. P. 4003(c). *See Lampe v. Williamson (In re Lampe),* 331 F.3d 750, 757 (10th Cir. 2003) (finding tools of the trade exemption was properly claimed because the trustee failed to meet her burden of proving that debtor lacked an ownership interest in farm equipment). *See also In re Lerner,* ___ B.R. ___, 2019 WL 7604709, *5 (Bankr. D. Kan. Dec. 11, 2019) (concluding it was bound by *Lampe* and that Rule 4003(c) applied to state-law claims of exemptions of personal property*); In re Willcut*, 472 B.R. 88, 92 (10th Cir. BAP 2012) (party objecting to homestead exemption bears the burden of proving the impropriety of the exemption).
[11] KAN. STAT. ANN. § 60-2312(a) (2005); 11 U.S.C. § 522(b).
[12] *Mansell v. Carroll,* 379 F.2d 682, 684 (10th Cir. 1967); *In re Garstecki,* 364 B.R. 95, 100 (Bankr. D. Kan. 2006).

5

> Except as provided in K.S.A. 2018 Supp.12-524a, and amendments thereto, a homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the *owner* or by the family of the *owner*, or by both the *owner* and family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law ….[13]

The Bank's position is understandable at first glance given the statute's use of the word "owner." But, consistent with long-standing precedent in the Kansas appellate courts, exemption laws are interpreted liberally.[14] Fee title ownership is not a prerequisite to claiming a homestead. Rather, Kansas appellate cases hold that a leasehold is a sufficient "title" to support a homestead claim.[15] Following longstanding precedent, the Kansas Supreme Court held in 2007 that—

> debtors may claim the homestead exemption based on any interest in real estate, whether legal or equitable, as long as the debtors have not abandoned their occupation of or intent to occupy the real estate. Accordingly, the term "owner" as used in K.S.A. 60–2301 applies to the holder of any interest in real estate, regardless of whether the interest is in fee simple.[16]

Nor is this conclusion new. In 1980, the Kansas Court of Appeals held that "[t]he establishment of a homestead interest does not depend upon being the titleholder of the property in question. Those persons referred to in the homestead

---

[13] KAN. STAT. ANN. § 60-2301 (2018 Supp.) (emphasis added).
[14] *Nohinek v. Logdson*, 6 Kan. App. 2d 342, 344, 628 P.2d 257 (1981) (recognizing rule that exemptions are liberally construed in favor of those intended to be benefited and favorable to the purpose of the exemption); *In re Garstecki,* 364 B.R. 95, 100 (noting that homestead exemption in particular is to be construed to protect "the family from destitution, and society from the danger of her citizens becoming paupers," quoting *Morris v. Ward,* 5 Kan. 239, 244 (1869)); *Anderson v. Shannon*, 146 Kan. 704, 711, 73 P.2d 5 (1937) (same); *Bohl v. Bohl*, 234 Kan. 227, 230, 670 P. 2d 1344 (1983) (same).
[15] *Redmond v. Kester*, 284 Kan. 209, 216, 159 P.3d 1004 (2007)(answering certified question*); In re Kester*, 493 F.3d 1208 (10th Cir. 2007)(conforming to answer of certified question).
[16] *Id.*

provisions of the Kansas Constitution and statutes may enjoy a homestead interest, but not an interest rising to the rank of an estate."[17] And, in 1880, the Kansas Supreme Court held that a leasehold estate can support the homestead right. In *Hogan v. Manners*,[18] the defendant had leased a town lot intending to build a building there that he could remove if the owner sold the lot. Manners built the building, establishing a butcher's shop on the ground floor, and a residence upstairs. He then mortgaged the land, but his wife didn't sign the mortgage. Invoking that part of the homestead statute that precludes one spouse from encumbering a homestead without the other's consent, Manners and his wife resisted the mortgage's foreclosure. The Kansas Supreme Court held that a leasehold interest is an interest in land and that the lessee may be an "owner" for the purpose of the homestead statute.[19]

Jerry Schepmann is a lessee who may claim an "ownership in land," just not fee simple title. Therefore, under the rule in *Kester* and its forbears, he can exempt the leasehold as his homestead. The Bank's complaint that this is not a "traditional lease" is neither supported by fact nor this Court's general understanding of custom and usage in Kansas. Oral leases are commonplace, so much so, that the Kansas Legislature has enacted statutes that govern their establishment, renewal, and cancellation.[20] Second, while Jerry doesn't cultivate the few acres where the house

---

[17] *In re Estate of Fink*, 4 Kan. App.2d 523, 532, 609 P. 2d 211 (1980) (citations omitted).
[18] 23 Kan. 551 (1880).
[19] *Id.* at 558.
[20] *See, e.g.*, KAN. STAT. ANN. § 58-2506 and 2506a (2005) (governing the termination of farm tenancies other than as provided in written lease).

7

and the outbuildings sit, he does lease and farm the other tracts Marie leases to him. Both Jerry and his mother testified that the farmstead was intended to be part of the leasehold. Though Mrs. Schepmann has title to the Land, Jerry has improved it and lives there. He pays the ad valorem taxes on the farmstead while she pays them on the ground he cultivates. His possessory leasehold interest in the land supports his homestead exemption.

*The improvements are fixtures.*

Jerry claims his "possessory and leasehold interest" in the structures situated on the farmstead as part of his homestead. Are the barns, well shed, and house/office fixtures? Fixtures are personal property that are incorporated into or attached to real estate. They have become so affixed or attached as to have become a part of the land in question.[21] Kansas common law makes clear that the structures Jerry erected on the land have become part of the land. Kansas state courts consider three factors in determining whether personal property has become a fixture—attachment, adaptation, and intent:

> To determine whether personal property has become so permanent in character that it must be classified as an improvement to real estate . . . courts consider (1) the degree of permanency with which the property is attached to the realty, (2) the adaptation of that property to the use or purpose to which the realty is devoted, and (3) the intention of the property's owner to make the property a permanent accession to the freehold.[22]

---

[21] *See generally* 35A Am. Jur. 2d Fixtures § 1.
[22] *City of Wichita v. Denton*, 296 Kan. 244, 258, 294 P.3d 207 (2013). *See also Stalcup v. Detrich,* 27 Kan. App. 2d 880, 886, 10 P.3d 3 (2000).

8

Attachment alone is insufficient to change the character of personal property. Courts give less importance to the degree of permanency when there is persuasive evidence that the property has been adapted to the land's use and the annexor intended it to become part of the land.[23]

Applying these factors to the structures Jerry built on the land, I first find that they are attached with a great degree of permanency. The big barn is anchored to five-foot underground concrete pillars. The pole-barn poles are likewise sunk in the ground. The well shed and house are frame-built structures that are attached to permanent foundations. The house is finished inside—removing it would likely destroy its walls, ceilings, and other interior elements. Second, the improvements are fully adapted to the use or purpose of the land. Schepmann farms and ranches. One Schepmann or another has farmed and ranched on this land for over 100 years. Farming involves barns, wells, an office or headquarters, and a place to live. Finally, Jerry and Marie intended to make these improvements permanent. They are permanently attached and cannot be severed without considerable damage. Each is anchored to a foundation or set into the ground. Both Jerry and Marie testified to their wish to improve this property that he will someday own. Jerry personally assisted in construction of some of these improvements and directed their being constructed in this permanent manner. All three factors being present, I

---

[23] *See Atchison, T. & S.F.R. Co. v. Morgan,* 42 Kan. 23, 21 P. 809, 811-12 (1889) (physical annexation to the realty is not alone sufficient to change character of personal property; instead the adaptation to the land and the annexor's intent is more important).

9

can easily conclude that the structures are fixtures—they have become part of the land.

There is some question in the record over who owns the structures, though determining this issue doesn't affect the outcome of this case. Marie says she owns them, but Jerry depreciates some of them on his income tax returns. But because they have become affixed to Marie's land, I conclude that she owns them. That being so, they hold no place in Jerry's bankruptcy estate except as part of what he leases. Marie's property is not property of this estate. Jerry's possessory interest in the property under the leasehold is exempt as part of his homestead. Indeed, Marie pays real property tax on the farm ground, but charges back the ad valorem tax she pays on the farmstead to Jerry. She considers his use of the land on which structures stand to be part of what she leases to him. Either way, they are beyond Jerry's creditors' reach.

Finally, the Court briefly addresses the Bank's "bad faith" argument that it says should preclude Jerry's belated amendment of Schedule C. The Court observes that Rule 1009(a) permits a debtor to amend a schedule "as a matter of course" at any time before the case is closed.[24] While courts in the past have conditioned a debtor's right to amend schedules on good faith, the Supreme Court overruled that judicial gloss on a debtor's right to amend in 2014.[25] Jerry's case remains open and

---

[24] Fed. R. Bankr. P. 1009(a).
[25] *Law v. Siegel,* 571 U.S. 415, 425 (2014) (holding that federal law provides no authority for bankruptcy courts to exercise equitable power to disallow an exemption based on a ground not specified in the Bankruptcy Code, *i.e.* debtor's bad faith). *See also In re Smith,* No. 13-11237-ta7, 2014 WL 7358808, *5 n.5 (Bankr. D. N.M. Dec. 24, 2014) (recognizing *Law v. Siegel's* overruling Tenth Circuit case law denying amendment of schedules based on debtor's bad faith).

his amendment of Schedule C to exempt this property as his homestead was permissible. Even if this Court were allowed to consider Jerry's alleged bad faith, the Bank did not demonstrate any prejudice or bad faith in the "late" amendment. Indeed, before this case was filed, the Bank requested Jerry's mother mortgage the farmstead to work out his debt. That suggests the Bank knew that Jerry's mother owned the farmstead and that Jerry resided there. There was no concealment of this property or Jerry's arrangement with his mother and no bad faith.[26]

Conclusion

Jerry Schepmann can exempt his leasehold possessory interest in the land upon which his farmstead lies and its improvements. The Bank's objection to the homestead exemption of the farmstead is OVERRULED. Because this Court concludes that the subject improvements are fixtures and part of the land and because Jerry did not claim the subject improvements exempt as tools of the trade, the Trustee's objection is OVERRULED as moot.

# # #

---

[26] The Bank's other complaints of allegedly unaccounted-for collateral bears little on this dispute.